UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL A. LANTERI,<br>*Plaintiff*, | : | CIVIL ACTION NO.<br>3:16-cv-02071 (VLB) |
| v. | : | |
| STATE OF CONNECTICUT,<br>*Defendant*. | : | August 7, 2017 |

### MEMORANDUM OF DECISION ON MOTION TO DISMISS [DKT. 13]

Plaintiff Michael Lanteri seeks monetary damages for the State of Connecticut's alleged violations under 42 U.S.C. § 1983. Plaintiff makes various claims that appear to have occurred while his divorce, alimony, and child custody issues took place. Defendant State of Connecticut has moved to dismiss Plaintiff's Complaint for failure to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). For the following reasons, the Court GRANTS Defendant's motion and dismisses Plaintiff's Complaint.

I.     Facts

Plaintiff was married to Nicole Lanteri when he was 39 years old, and their marriage lasted for 11 years. [Dkt. 1 (Compl.) at 6 of PDF]. Nicole is alleged to have mental health issues. *Id.* at 6, 10 of PDF. The Lanteris began divorce proceedings in June of 2013.[1] As a result of the proceedings, Plaintiff believes that risk of injury

---

[1] The Court takes judicial notice that the docket of their divorce case, *Lanteri v. Lanteri*, docket number KNO-FA13-4121693-S, is publicly available at:

**to a minor, parental alienation, and spousal abuse were "not held up by Connecticut."** ***Id.*** **¶¶ 2, 4, 5. Plaintiff believes the State of Connecticut did not uphold the Constitution, violated his due process and civil rights, and violated the First Amendment by "usi[ing] a religious ceremony to take [his] assets."** ***Id.*** **¶ 15. He also believes he has the constitutional right to the pursuit of happiness, which the state court took away from him.** ***Id.*** **¶ 28.**

**The divorce proceedings culminated in a trial upon which dissolution was then entered on October 22, 2014.** ***See*** **[Dkt. 13 (Mot. Dismiss) at 1];** ***see also Lanteri v. Lanteri*****, docket 230.00, docket number KNO-FA13-4121693-S. As part of the judgment, Plaintiff lost the right to his property, which he believes violates due process because "[t]he only way to take a person's property according to the Constitution is through Eminent Domain."** ***Id.*** **¶ 16. The state court also required Plaintiff to provide spousal support.** ***See id.*** **¶ 27. Plaintiff believes this is unconstitutional as he has "the right to divorce a spouse and never have to support a spouse again."** ***Id.*** **Plaintiff believes his ex-wife "commited crimes against [him] (perjury, child abuse, obstruction of justice, deformation [sic] of character, parent alienation)" and that "[r]ewarding a criminal is not a fair trial."** ***Id.*** **He also does not think he should have to pay for his son's college education because, after losing all his assets as a result of the proceeding, he "could possibly have to sell the family home to do so."** ***Id.*** **¶ 29. Ultimately, the total costs involving the divorce cost Plaintiff over $450,000.00.** ***Id.*** **at 6 of PDF.**

---

**http://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=KNOFA134121693S.**

Following the judgment, his ex-wife's attorneys, Terry and Jeremiah Donovan, filed a Motion for Contempt Post-Judgment, alleging Plaintiff failed to pay his fifty percent share of the costs of preparing two QDROs and failed to cooperate with Attorney Elizabeth McMahon. [Dkt. 13-6 (Mot. Dismiss Ex. C (State Court Mot. Contempt) at 1]. The Superior Court held a hearing and found Plaintiff in contempt. *See* [Dkt. 1 ¶ 6]. Plaintiff contends that the state court judge did not allow him to speak at the hearing. *Id.* ¶ 7.

Plaintiff believes "the [S]tate of Connecticut (DCF)" witnessed child abuse but did not prosecute these crimes. *Id.* at 6 of PDF. Plaintiff claims issues of child abuse are ongoing as his ex-wife is turning his son against him. *Id.* He also believes the State of Connecticut threatened to take away his son without due process. *Id.* ¶ 21. He believes the law was not upheld regarding his premarital assets. *Id.* ¶ 26. He also contends that the State of Connecticut violated his civil rights as a parent because a judge failed to uphold decisions he and his wife made as parents. *Id.* ¶ 25. Plaintiff avers that Connecticut denied his ability to use three years of digital recordings as evidence. *Id.* ¶ 1. He also takes issue with the fact that the State of Connecticut would not release the names of the judges on the grievance counsel despite his use of the Freedom of Information Act. *Id.* ¶ 32.

Plaintiff has filed multiple grievances. The first is against Lori Hellum, Esq., who he believes unlawfully discussed the outcome of a criminal case with his ex-wife's divorce attorney. *See id.* ¶ 2. The second is against Judge Pinkus for circumstances involving the divorce proceedings. *Id.* ¶¶ 30, 33. He believes Judge Pinkus has "left [his] son in an abusive situation" by giving his ex-wife custody

3

half of the week, even after listening "to testimony of the GAL and the Forensic psychiatrist." *Id.* ¶¶ 10, 33. The third is against Judge Carbonneau due to his handling of the contempt hearing. *Id.* at 7 of PDF. The fourth is against Harry Gould, his former attorney, for an unspecified reason. *See id.* ¶ 33; *see also* [Dkt. 17 (Opp'n Mot. Dismiss) at 4]. The fifth is against Terry and Jeremiah Donovan, his ex-wife's attorneys, for actions they took during the divorce proceedings for their own financial gain. *See id.* ¶¶ 18, 33-35. He believes the Donovans committed perjury regarding their client's assests, child care, and mental condition. *Id.* ¶ 14. They also allegedly prompted the case to carry on for a longer period of time than necessary for their personal gain. *Id.* ¶ 18-19. Plaintiff takes issue with the Donovan's alleged $94,000 attorneys' fees. *Id.* ¶ 35. In addition to the issues surrounding the divorce proceedings, he believes Jeremiah Donovan falsely reported a recording to the Navy, which cost him his security clearance and job. *Id.* ¶ 13.

Plaintiff also claims that Connecticut ignored Plaintiff's extortion issues arising from his "Secret Security clearance with the Federal Government." *Id.*

II. <u>Legal Standard</u>

"Federal courts are courts of limited jurisdiction. . . ." *Gunn v. Minton*, 568 U.S. 251, 256 (2013). Subject matter jurisdiction is not waivable, and a lack of subject matter jurisdiction may be raised at any time, by a party or the court *sua sponte*. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the

4

tribunal's subject-matter jurisdiction over the controversy."). If a court lacks subject matter jurisdiction, it must dismiss the action. *See* Fed. R. Civ. P. 12(h)(3).

A "district court must take all uncontroverted facts in the complaint [ ] as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings. . . ." *Id*. "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id*.

### III. Analysis

Plaintiff has filed suit against the State of Connecticut without identifying any other culpable party. Defendant argues that this suit should be dismissed in its entirety because the Eleventh Amendment bars suit against Defendant unless it waives such immunity. [Dkt. 13 at 3]. Defendant also requests that the Court decline to exercise supplemental jurisdiction over state claims. *Id.* at 5. Plaintiff, however, contends that the Eleventh Amendment applies only to "citizens of other states and foreign counties." [Dkt. 17 (Opp'n Mot. Dismiss) at 1].

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Although not expressly stated in the Constitution, the Supreme Court has held that this language

5

applies to suits against a state brought by its own citizens. *See Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974); *CSX Transp., Inc. v. New York State Office of Real Prop. Serv.*, 306 F.3d 87, 94 (2d Cir. 2002) (same). Sovereign immunity under the Eleventh Amendment is not absolute, however, and may be waived by the state or expressly abrogated by Congress "pursuant to a valid exercise of power." *CSX Transp., Inc.*, 306 F.3d at 95.

"[I]t is well established that Congress did not abrogate state sovereign immunity in enacting 42 U.S.C. § 1983. . . ." *Sargent v. Emons*, 582 F. App'x 51, 52 (2d Cir. 2014) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). The State of Connecticut is therefore immune from a § 1983 suit under the Eleventh Amendment to the United States Constitution unless it waives its sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159 (1985) ("[A]bsent waiver by the State or a valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."); *Brewer v. Brewer*, 34 F. App'x 28, 29-30 (2d Cir. 2002) (holding the plaintiff's "First Amendment claims against the State of New York pursuant to § 1983 are barred by the Eleventh Amendment since New York State has not consented to be sued"); *Turner v. Boyle*, 116 F. Supp. 3d 58, 73 (D. Conn. 2015) (finding the court lacked subject matter jurisdiction "[b]ecause Connecticut has not waived its sovereign immunity with respect to claims brought under sections 1983 or 1985. . . ."); *Taylor v. Norwalk Cmty. Coll.*, No. 3:13-cv-1889 (CSH), 2015 WL 5684033, at *14 (D. Conn. Sept. 28, 2015) ("[T]he Eleventh Amendment bars federal courts from accepting such suits brought by private parties against an unconsenting State and its agencies," and it "is thus 'clearly established that the

Eleventh Amendment bars section 1983 claims against state agencies.' ") (quoting *P.C. v. Conn. Dep't of Children & Families*, 662 F. Supp. 2d 218, 226 (D. Conn. 2009)). Connecticut has not waived immunity in this case and therefore the Eleventh Amendment bars the Court from exercising subject matter jurisdiction over his § 1983 claims.

Because Plaintiff's state claims pertain to divorce, alimony, and child custody, this Court will not exercise supplemental jurisdiction over them pursuant to the domestic relations doctrine exception, which "divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). The purpose of this doctrine is because "[a]s a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Id.* at 704. Plaintiff's repeated reference to his divorce, alimony, and child custody strongly suggests that his claims either seek reversal of state court rulings that he has or had the right to appeal or are better addressed in state court. *See Weiss v. Weiss*, 375 F. Supp. 2d 10, 15 (D. Conn. 2005) (stating that the decision for federal courts to disclaim jurisdiction in domestic relations cases "is statutory, not constitutional, in nature" and "rests on the history of the diversity jurisdiction statute, 28 U.S.C. § 1332, as well as 'sound policy considerations'"); *U.S. Life Ins. Co. v. Marshall*, No. 3:13-CV-00380 (VLB), 2014 WL 2040389, at *5 (D. Conn. May 16, 2014) (acknowledging that "federal courts 'should further abstain from exercising jurisdiction over cases on

the verge of being matrimonial in nature") (quoting *Hamilton v. Hamilton–Grinols*, 363 F. App'x 767, 769 (2d Cir. 2010)). The Court is therefore precluded from exercising jurisdiction under this domestic relations doctrine exception. *See Hamilton*, 363 F. App'x at 769.

The Court also notes that Plaintiff's challenges to state court decisions may also be subject to one or more abstention or comity doctrines, such as the *Rooker-Feldman* doctrine. Under the *Rooker-Feldman* doctrine, federal district courts may not exercise subject matter jurisdiction over suits that are, in substance, appeals from state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-15 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Gonzalez v. Ocwen Home Loan Servicing*, 74 F. Supp. 3d 504, 513 (D. Conn. 2015) (stating the *Rooker-Feldman* doctrine depends on "the causal relationship between the state-court judgment and the injury of which the party complains in federal court," not the similarity between the claims) (quoting *McKithen v. Brown*, 481 F.3d 89, 97-98 (2d Cir. 2007)). The doctrine is limited to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005). Because Plaintiff's federal claims appear "inextricably intertwined" with issues already decided by the state court, the *Rooker-Feldman* doctrine may also prevent the Court from exercising subject matter jurisdiction over this case. *See Mitchell v. Fishbein*, 377 F. 3d 157, 165 (2d Cir. 2004); *Holland v. New York*, 63 F. App'x 532, 533 (2d Cir. 2003) (affirming district court's dismissal

for lack of subject matter jurisdiction of case involving allegations arising from contested divorce suit); *Weiss v. Weiss*, 375 F. Supp. 2d at 18 (ruling the *Rooker-Feldman* doctrine barred the district court from considering the ex-wife's tort claims).

Lastly, were the claims to go forward, misjoinder may require the Court to sever Plaintiff's allegations as they include a laundry list of claims against numerous people for various unrelated acts and omissions. *See* Fed. R. Civ. P. 21; *Sanchez v. O'Connell*, No. 3:08cv706 (JBA), 2010 WL 7862797, at *1 (D. Conn. Sept. 27, 2010) (noting that courts have held claims are misjoined when they fail to satisfy Fed. R. Civ. P. 20(a)); Fed. R. Civ. P. 20(a)(2) (establishing that defendants may be joined in an action if a right to relief is asserted against them "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action"). In deciding whether to sever a claim for misjoinder, the Court should consider the following factors: "(1) the claims arise out of the same transaction or occurrence; (2) the claims present some common question of law or fact; (3) . . . settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided; and (5) different witnesses and documentary proof are required for the separate claims." *Fletcher v. City of New London*, No. 3:16-cv-241 (MPS), slip op. at 8 (D. Conn. Feb. 21, 2017) (quoting *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263 (D. Conn. 2012)). Here, Plaintiff appears to be asserting claims against the DCF, several attorneys, judges, and possibly the grievance council for separate and wholly unrelated conduct. Even if two or more

of these claims were appropriate for adjudication by this Court, it is likely they would have to be brought in disparate actions.

IV. **Conclusion**

Accordingly, Plaintiff's § 1983 claim is hereby DISMISSED and Plaintiff's state claims are DISMISSED WITHOUT PREJUDICE. The Clerk is directed to close this case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut: August 7, 2017